**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **RONALD HARRIS,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Case No. SAG-13-2839 |
| | * | |
| **KEYSTONE INSURANCE CO.,** | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM AND ORDER**

Plaintiff Ronald Harris ("Plaintiff") filed this action against Keystone Insurance Company ("Keystone") for breach of contract after Keystone denied Plaintiff's claim for the loss of his vehicle. [ECF No. 1].[1] Presently pending before the Court is Keystone's Motion for Summary Judgment. [ECF No. 27]. The Court has also reviewed Plaintiff's Opposition and Keystone's Reply. [ECF Nos. 28, 30]. No hearing is deemed necessary. *See* Local R. 105.6 (D. Md. 2014). For the reasons stated herein, Keystone's Motion is DENIED.

**I.   FACTS**

On the night of September 28, 2012, Plaintiff's vehicle, a Dodge Charger, was allegedly stolen from Plaintiff's home in Owings Mills, Maryland, and subsequently set on fire at the 100 block of Gorman Avenue in Baltimore, Maryland. Compl. ¶¶ 5, 7; Def. Mot., Exh. 3. At the scene, police interviewed a witness who stated that at approximately 7:00 p.m., he/she saw a flatbed tow truck pull onto Gorman Avenue and unload a Dodge Charger. *Id.* at 19. The witness

---

[1] Plaintiff also included a "bad faith" tort claim in his complaint (Count II), which Judge Blake dismissed. [ECF No. 13]. Judge Blake subsequently referred the case to this Court for all proceedings with the consent of the parties, pursuant to 28 U.S.C. § 636(c). [ECF No. 18].

observed an individual get out of a silver compact vehicle and remove items from the Charger, then place them in the silver vehicle and drive away. *Id.* About two hours later, the witness heard sirens, and saw the Charger engulfed in flames. *Id.* at 28.

Plaintiff was at the movies with a friend in Jersey City, New Jersey when his roommate notified him that a police officer left a note in their door regarding his car. Pl. Opp. 2. Plaintiff was able to get in touch with the officer the following Sunday, September 30, 2012. *Id.* at 3. When he spoke to the officer, Plaintiff reported the vehicle stolen. Def. Mot., Exh. 3. He told the police that he last saw his vehicle outside his home on the night of September 28, 2012, between 6:00 p.m. and 7:00 p.m. *Id.* at 24. A friend then picked him up from his home to bring him to Enterprise Rent-A-Car at BWI airport, where he rented a car to drive to New Jersey for the weekend. *Id.* Plaintiff explained to the police that he rented a car because it was cheaper than driving his own car. *Id.* Plaintiff also told the police that his car had 100,000 miles on it and no mechanical issues. *Id.* Plaintiff was subsequently interviewed by the Arson Unit. *Id.* at 26.

On October 2, 2012, Plaintiff filed a claim for the loss of his vehicle with his automobile insurance carrier, Keystone Insurance Company. Pl. Opp. 3. Plaintiff's insurance policy with Keystone ("the Policy") provides that "[Keystone] will pay for direct and accidental loss to 'your covered auto' . . . caused by . . . theft or larceny." Def. Mot., Exh. 1 (Keystone Auto Insurance Policy, p. 7). On October 24, 2012, a Keystone representative took a recorded statement from Plaintiff. Def. Mot., Exh. 4. When asked whether there were any mechanical problems with his vehicle prior to the loss, Plaintiff replied that it had been overheating, but he had gotten it fixed. *Id.* at 5. When asked whether there were any other problems with his vehicle, Plaintiff replied "Um, the engine (Inaudible) the left side lately but um, I have a warranty and I was about to get

2

it uh, looked at." *Id.* Plaintiff claimed that everything was still covered under warranty. *Id.* Plaintiff also told Keystone that he rented a car instead of driving his own because he was trying to save his miles. *Id.* at 7. Plaintiff explained that he rented a car after he got off work, about 7:00 p.m., and that he carpooled with his roommate to work and then got a ride to BWI. *Id.* at 8.

On November 21, 2012, counsel for Keystone wrote to Plaintiff to request the contact information of the woman he was at the movies with in New Jersey the night of the alleged theft, along with any and all written communications between them, among other things. Def. Reply, Exh. 5. In a series of e-mail exchanges, Plaintiff explained to Keystone's counsel that he did not know the woman's real last name, nor did he have her contact information, as he met and communicated with the woman through a Facebook group that no longer existed, and so he was unable to currently contact her. *Id.*

On January 31, 2013, Plaintiff provided additional testimony to Keystone during an examination under oath (EUO). Def. Mot., Exh. 5. In his EUO, Plaintiff testified that his vehicle did not start for about a week before it was stolen. *Id.* at 32, 36. Plaintiff explained that AAA towed his car from his job to a nearby Dodge dealer that estimated repairs at $8,000, and that he wanted to look for a cheaper option, so he got his car towed to his home by a tow company the Dodge dealer recommended. *Id.* at 33–34, 37–38. Plaintiff also explained that about one or two days before his car was stolen, he found his warranty paperwork, and that the repairs would have been covered under warranty. *Id.* at 34–35, 39. Plaintiff testified that on the night his car was stolen, he rented a car to drive to New Jersey because his car was not working. *Id.* at 45–46. Keystone later determined that the warranty was no longer in effect at the time of the loss. Def. Mot., Exh. 6.

After Plaintiff's EUO, counsel for Keystone e-mailed Plaintiff to request information on the tow company that towed Plaintiff's vehicle from the Dodge dealer to his home, including a receipt for the tow, among other things. Def. Reply, Exh. 5. In another series of e-mail exchanges, Plaintiff provided Keystone with the name and number of the tow company, Norwood Towing, but explained that the company only took cash and so he did not have a receipt for the tow. *Id.*

Based on its investigation, Keystone concluded that Plaintiff was not entitled to coverage under the Policy, and denied his claim. Def. Mot. 4–5. The instant litigation ensued. Keystone now moves for summary judgment, arguing that it was under no contractual duty to cover the loss of Plaintiff's vehicle because Plaintiff failed to comply with the terms of the Policy. Specifically, Keystone claims there is "substantial evidence" that Plaintiff: (1) made fraudulent statements to Keystone, and (2) failed to cooperate during Keystone's investigation of the alleged theft, in violation of the Policy. Thus, Keystone argues, it is entitled to judgment as a matter of law.

## II.    LEGAL STANDARD

A motion for summary judgment is granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A party seeking summary judgment bears the burden of showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325

(1986). In response, the nonmoving party must show that there is a genuine issue for trial. *Id.* at 324.

When considering a motion for summary judgment, a court "must view the evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in favor of the nonmovant." *McLean v. Ray*, 488 F. App'x 677, 682 (4th Cir. 2012) (citations and internal quotation marks omitted). A court must "not . . . weigh the evidence and determine the truth of the matter," but rather "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## III.   ANALYSIS

### 1.  Fraudulent Statements

Keystone argues that Plaintiff is not entitled to coverage of his claim because he made fraudulent statements to Keystone, in violation of Part F of the Policy, which states, in relevant part: "We do not provide coverage for any 'insured' who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy." Def. Mem., Exh. 1 (Keystone Auto Insurance Policy, p. 11). The Policy does not provide a definition of "fraudulent statements" or "fraudulent conduct." Thus, we must turn to Maryland common law. *See Simms v. Mut. Benefit Ins. Co.*, 137 F. App'x 594, 599 (4th Cir. 2005) ("[T]he policy is silent as to the steps [the insurer] must take to establish that the [insured] has engaged in fraudulent conduct. Thus, we turn to common law [fraud] to determine those steps.").

Insurers who seek to establish that an insured has submitted a fraudulent claim must show by clear and convincing evidence that: (1) "'the representation made is false;'" (2) "'its falsity was either known to the speaker, or the misrepresentation was made with such a reckless

5

indifference to truth as to be equivalent to actual knowledge;'" and (3) "'it was made for the purpose of defrauding the person claiming to be injured thereby.'"  *Id.* (quoting *Martens Chevrolet, Inc. v. Seney*, 292 Md. 328, 333, 439 A.2d 534, 537 (1982)); *see also Parker v. Columbia Bank*, 91 Md. App. 346, 359, 604 A.2d 521, 528 (1992) ("In order to constitute a 'false representation,' a statement must be a misrepresentation of material fact.").  "Although proof of the [insurer's] detrimental reliance is unnecessary, proof of the [insured's] intent to deceive remains a vital element in all claims of fraud."  *Simms*, 137 F. App'x at 600.

Keystone argues that there is "undisputed and convincing evidence" that Plaintiff made fraudulent statements to Keystone and to the police regarding: (1) the operational status of his vehicle at the time of the alleged theft; (2) the warranty status of his vehicle at the time of the alleged theft; (3) the reason for renting a vehicle on the night of the alleged theft; and (4) Plaintiff's recollection of the events on the night of the alleged theft.  Def. Mot. 11–12.  Given the concern that Plaintiff was involved with the arson of his own vehicle, Keystone argues, these fraudulent statements are material.  *Id.* at 12.  Keystone contends that, "[i]f it determined that there was a false statement made and the falsity concerned a material matter, an insurer is allowed to deny the entire claim resulting from an occurrence."  Def. Reply 10.

Keystone's arguments are unpersuasive.  Keystone focuses little, if at all, on a critical element of fraud—Plaintiff's intent to defraud.  Instead, Keystone seems to be applying the two-prong test to determine whether an insurance contract is voidable because an insured made a false statement in his *application* for an insurance policy.  *See Mendez v. Nationwide Prop. and Cas. Ins. Co.*, 910 F. Supp. 2d 784, 791 n.6 (D. Md. 2012) ("Generally, insurance contracts are voidable and the insurer need not prove intent where the insured (1) made false statements in *entering* the insurance contract and (2) the statements were material.").  Such test is not

applicable here. Thus, even if it was undisputed that Plaintiff knowingly made false representations with regards to his claim, Keystone has failed to establish that Plaintiff made these statements with the requisite intent to deceive Keystone. Even so, ascertaining Plaintiff's state of mind is a function of the jury, not the court. *See Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979) ("[S]ummary judgment is seldom appropriate in cases wherein particular states of mind are decisive as elements of claim or defense."); *Oliff-Michael v. Mut. Benefit Ins. Co.*, 262 F. Supp. 2d 602, 604 (D. Md. 2003) ("Questions of fraud are fact-specific and generally involve dramatically opposite positions of the parties on the interpretation of the factual issues as applied to the law. [The] resolution of the issues of fact depends upon a determination of credibility, and [summary judgment] is not the proper stage of litigation for those credibility determinations.") (internal citations omitted); *see also Tru-Fit Clothes, Inc. v. Underwriters at Lloyd's London*, 151 F. Supp. 136, 139 (D. Md. 1957) ("Intent to defraud is not to be presumed and the trier of fact—that is, the jury—should make all reasonable allowance for lack of knowledge, or sound judgment, or for honest mistake on the part of the insured . . . ."). For these reasons, Keystone's argument that Plaintiff's alleged fraudulent statements precluded his recovery under the Policy fails.

**2. Failure to Cooperate**

Keystone also argues that Plaintiff is not entitled to coverage because he failed to cooperate with Keystone's investigation of his claim, in violation of Part E(B) of the Policy, which states, in relevant part: "We have no duty to provide coverage under this policy unless there has been full compliance with the following duties: . . . Cooperate with us in the investigation, settlement or defense of any claim or suit."[2] Def. Mot., Exh. 1 (Keystone Auto

---

[2] Part E(B) states in full: "A person seeking any coverage must: 1. Cooperate with us in the investigation, settlement or defense of any claim or suit. 2. Promptly send us copies of any notices or legal papers received in connection with

Insurance Policy, p. 10). Specifically, Keystone argues that Plaintiff failed to provide the contact information of his "alibi witness" (the woman he was at the movies with in New Jersey), and failed to provide a towing receipt from Norwood Towing to show Plaintiff had his car towed to his home. Def. Mot. 13–14. Keystone relies heavily on *Phillips v. Allstate Indemnity Co.*, 156 Md. App. 729, 848 A.2d 681 (2004), for its argument that Plaintiff failed to cooperate during the investigation. *Phillips*, however, is distinguishable from this case. There, the insured refused to answer any questions about his financial circumstances at an EUO required by the policy terms. *Id.* at 742. The court concluded that, under the circumstances, the insured's refusal to answer constituted a failure to cooperate that voided the policy. *Id.* at 745. Here, in contrast, Plaintiff did not affirmatively refuse to answer Keystone's questions regarding the alibi witness and the towing receipt, but rather explained to Keystone's counsel that he did not possess the information they sought, after making unsuccessful attempts to retrieve it. *See* Def. Reply, Exh. 5. The relevant inquiry, then, is whether Plaintiff is credible, which is a question for the jury. In sum, the Court cannot conclude as a matter of law that Plaintiff failed to cooperate, and Keystone's argument therefore fails.

### 3. Recoverable Damages

Keystone lastly argues that, even if Plaintiff were eligible for coverage, he is not entitled to the recovery he seeks pursuant to the terms of the Policy. Def. Mot. 14. Keystone contends that Plaintiff seeks recovery for: (1) the total loss of his vehicle; (2) a $10,000 loan Plaintiff obtained to purchase a new vehicle; and (3) $4,926.35 for the rental of vehicles prior to

---

the accident or loss. 3. Submit, as often as we reasonably require: a. to physical exams by physicians we select. We will pay for these exams. b. to examination under oath and subscribe to the same. 4. Authorize us to obtain: a. medical reports; and b. other pertinent records. 5. Submit a proof of loss when required by us." Def. Mot., Exh. 1 (Keystone Auto Insurance Policy, p. 10).

Keystone's final decision to deny Plaintiff's claim. *Id.* However, Keystone argues, Plaintiff is only entitled to the pre-loss fair market value of his vehicle. *Id.* Keystone's argument fails.

Under the express terms of the Policy, if Keystone is found to be in breach and must therefore cover the loss of Plaintiff's vehicle, Keystone will pay the "actual cash value" of the vehicle, with an "adjustment for depreciation and physical condition" at the time of loss, minus any applicable deductible. Def. Mot., Exh. 1 (Keystone Auto Insurance Policy, pp. 7, 9). Keystone will also pay, "without application of a deductible, up to $15 per day, to a maximum of $450, for . . . [t]ransportation expenses incurred by [Plaintiff] in the event of the total theft" of Plaintiff's vehicle. *See id.* at 8.

In addition, under Maryland common law, "the non-breaching party is entitled to compensatory damages which are the natural and proximate consequence of the breach, or which are reasonably within the parties' contemplation at the time of contracting. The measure of such damages is the sum which would place the injured party in the same position as if the contract had been performed." *Munday v. Waste Mgmt. of N. Am., Inc.*, 997 F. Supp. 681, 685 (D. Md. 1998) (internal citations omitted). The extent of appropriate compensatory damages, if any, is a question for the jury.

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED this 10th day of March, 2015 that Keystone's Motion for Summary Judgment [ECF No. 27] is DENIED.

Dated: March 10, 2015

                                              /s/
                                        Stephanie A. Gallagher
                                        United States Magistrate Judge