**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **RONALD HARRIS,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Case No. SAG-13-2839 |
| | * | |
| **KEYSTONE INSURANCE CO.,** | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM AND ORDER**

Plaintiff Ronald Harris ("Plaintiff") filed this action against Keystone Insurance Company ("Keystone") for breach of contract after Keystone denied Plaintiff's claim for the loss of his vehicle. [ECF No. 1].[1] Presently pending before the Court is Keystone's second Motion for Summary Judgment.[2] [ECF No. 48]. Plaintiff was previously represented by attorneys; however, his attorneys have since withdrawn their representation. *See* [ECF Nos. 46, 47]. Plaintiff was notified of his attorneys' withdrawal in a letter from this Court dated September 25, 2015, [ECF No. 49], one day after Keystone filed the instant Motion for Summary Judgment. He was further advised that his case would proceed with him acting as his own attorney, unless and until new counsel entered an appearance on his behalf.[3] *Id.* Plaintiff filed a Motion for a

---

[1] Plaintiff also included a "bad faith" tort claim in his complaint (Count II), which Judge Blake dismissed. [ECF No. 13]. Judge Blake subsequently referred the case to this Court for all proceedings with the consent of the parties, pursuant to 28 U.S.C. § 636(c). [ECF No. 18].

[2] Keystone previously filed another Motion for Summary Judgment on December 26, 2014, [ECF No. 27], which was denied on March 10, 2015, [ECF No. 31]. Keystone now renews its Motion for Summary Judgment and presents newly discovered evidence in support of its Motion.

[3] In addition, Plaintiff was mailed a Rule 12/56 letter on September 25, 2015, [ECF No. 50], notifying him that Keystone had filed a Motion for Summary Judgment and that he had seventeen (17) days from the date of the letter to file a response. The letter further advised that failure to file a timely written response could result in dismissal of his case or the entry of judgment against him without further notice. *Id.*

Continuance on October 13, 2015, seeking additional time to find new counsel. [ECF No. 51]. The Court granted Plaintiff a continuance of three weeks, and ordered that any response to Keystone's Motion for Summary Judgment would be due on November 9, 2015. [ECF No. 53]. Plaintiff has not filed any response, and no counsel has entered an appearance on his behalf. No hearing is deemed necessary. *See* Local R. 105.6 (D. Md. 2014). For the reasons stated herein, Keystone's Motion is DENIED.

I.   FACTS

On the night of September 28, 2012, Plaintiff's vehicle, a Dodge Charger, was allegedly stolen from Plaintiff's home in Owings Mills, Maryland, and subsequently set on fire at the 100 block of Gorman Avenue in Baltimore, Maryland. Compl. ¶¶ 5, 7; [ECF No. 27., Exh. 3]. At the scene, police interviewed a witness who stated that at approximately 7:00 p.m., he/she saw a flatbed tow truck pull onto Gorman Avenue and unload a Dodge Charger. *Id.* at 19. The witness observed an individual get out of a silver compact vehicle and remove items from the Charger, then place them in the silver vehicle and drive away. *Id.* About two hours later, the witness heard sirens, and saw the Charger engulfed in flames. *Id.* at 28.

Plaintiff was at the movies with a friend in Jersey City, New Jersey when his roommate notified him that a police officer left a note in their door regarding his car. [ECF No. 28 at 2]. Plaintiff was able to get in touch with the officer the following Sunday, September 30, 2012. *Id.* at 3. When he spoke to the officer, Plaintiff reported the vehicle stolen. [ECF No. 27, Exh. 3]. He told the police that he last saw his vehicle outside his home on the night of September 28, 2012, between 6:00 p.m. and 7:00 p.m. *Id.* at 24. A friend then picked him up from his home to bring him to Enterprise Rent-A-Car at BWI airport, where he rented a car to drive to New Jersey for the weekend. *Id.* Plaintiff explained to the police that he rented a car because it was cheaper

than driving his own car.  *Id.*  Plaintiff also told the police that his car had 100,000 miles on it and no mechanical issues.  *Id.*  Plaintiff was subsequently interviewed by the Arson Unit.  *Id.* at 26.

On October 2, 2012, Plaintiff filed a claim for the loss of his vehicle with his automobile insurance carrier, Keystone Insurance Company.  [ECF No. 28 at 3].  Plaintiff's insurance policy with Keystone ("the Policy") provides that "[Keystone] will pay for direct and accidental loss to 'your covered auto' . . . caused by . . . theft or larceny."  Def. Mot., Exh. 1 (Keystone Auto Insurance Policy, p. 7).  On October 24, 2012, a Keystone representative took a recorded statement from Plaintiff.  [ECF No. 27, Exh. 4].  When asked whether there were any mechanical problems with his vehicle prior to the loss, Plaintiff replied that it had been overheating, but he had gotten it fixed.  *Id.* at 5.  When asked whether there were any other problems with his vehicle, Plaintiff replied "Um, the engine (Inaudible) the left side lately but um, I have a warranty and I was about to get it uh, looked at."  *Id.*  Plaintiff claimed that everything was still covered under warranty.  *Id.*  Plaintiff also told Keystone that he rented a car instead of driving his own because he was trying to save his miles.  *Id.* at 7.  Plaintiff explained that he rented a car after he got off work, about 7:00 p.m., and that he carpooled with his roommate to work and then got a ride to BWI.  *Id.* at 8.

On November 21, 2012, counsel for Keystone wrote to Plaintiff to request the contact information of the woman he was at the movies with in New Jersey the night of the alleged theft, along with any and all written communications between them, among other things.  [ECF No. 30, Exh. 5].  In a series of e-mail exchanges, Plaintiff explained to Keystone's counsel that he did not know the woman's real last name, nor did he have her contact information, as he met and

communicated with the woman through a Facebook group that no longer existed, and so he was unable to contact her. *Id.*

On January 31, 2013, Plaintiff provided additional testimony to Keystone during an examination under oath ("EUO"). [ECF No. 27, Exh. 5]. In his EUO, Plaintiff testified that his vehicle did not start for about a week before it was stolen. *Id.* at 32, 36. Plaintiff explained that AAA towed his car from his job to a nearby Dodge dealer that estimated repairs at $8,000, and that he wanted to look for a cheaper option, so he got his car towed to his home by a tow company the Dodge dealer recommended. *Id.* at 33–34, 37–38. Plaintiff also explained that about one or two days before his car was stolen, he found his warranty paperwork, and that the repairs would have been covered under warranty. *Id.* at 34–35, 39. Plaintiff testified that on the night his car was stolen, he rented a car to drive to New Jersey because his car was not working. *Id.* at 45–46. Keystone later determined that the warranty was no longer in effect at the time of the loss. [ECF No. 27, Exh. 6].

After Plaintiff's EUO, counsel for Keystone e-mailed Plaintiff to request information on the tow company that towed Plaintiff's vehicle from the Dodge dealer to his home, including a receipt for the tow, among other things. [ECF No. 30, Exh. 5]. In another series of e-mail exchanges, Plaintiff provided Keystone with the name and number of the tow company, Norwood Towing, but explained that the company only took cash and so he did not have a receipt for the tow. *Id.*

Based on its investigation, Keystone concluded that Plaintiff was not entitled to coverage under the Policy, and denied his claim. [ECF No. 27 4–5]. The instant litigation ensued. Keystone filed its first Motion for Summary Judgment, which was denied on March 10, 2015. Keystone conducted additional discovery and was able to locate the woman with whom Plaintiff

had allegedly attended a movie in New Jersey the evening that his car was allegedly stolen. Keystone determined that Plaintiff's alibi witness was a woman named Samira Muhammad.[4] Keystone deposed Ms. Muhammad on June 2, 2015, [ECF No. 48, Exh. 5], and questioned her on, among other subjects, the nature and extent of her relationship with Plaintiff. Contrary to Plaintiff's initial statement that he had only met Ms. Muhammad once, and subsequent statements that he had seen her more than once but did not have her contact information, Ms. Muhammad testified that she and Plaintiff were Facebook friends, and that they spoke on the phone periodically. [ECF No. 48, Exh. 5 at 15:23-16:4]. Further, Ms. Muhammad testified that she and Plaintiff had been to the movies together twice, and estimated that she had seen him in party settings approximately ten times when he was in New Jersey. *Id.* at 13:12-23; 11:21-12:17.

Based on Ms. Muhammad's testimony, Keystone contends that there is no genuine dispute of material fact as to whether Plaintiff provided fraudulent statements and failed to cooperate in Keystone's investigation of his claim with respect to providing Ms. Muhammad's contact information. Thus, Keystone argues that Plaintiff breached his contract with Keystone and, as a result, that his claim was not covered under the Policy. Accordingly, Keystone asserts that it is entitled to judgment as a matter of law.

## II.   LEGAL STANDARD

A motion for summary judgment is granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

---

[4] While Plaintiff referred to Ms. Muhammad as "Ms. Blaze" in his deposition testimony, for the sake of consistency, this opinion will use "Ms. Muhammad," as Keystone did in its Motion.

A party seeking summary judgment bears the burden of showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In response, the nonmoving party must show that there is a genuine issue for trial.  *Id.* at 324.

When considering a motion for summary judgment, a court "must view the evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in favor of the nonmovant." *McLean v. Ray*, 488 F. App'x 677, 682 (4th Cir. 2012) (citations and internal quotation marks omitted).  A court must "not . . . weigh the evidence and determine the truth of the matter," but rather "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### III.   ANALYSIS

Keystone contends that newly discovered evidence, in addition to the arguments it raised in its previous Motion for Summary Judgment, demonstrate with no genuine dispute of material fact that Plaintiff breached his contract with Keystone.  Specifically, Keystone argues that Plaintiff is not entitled to coverage of his claim because he made fraudulent statements to Keystone, in violation of Part F of the Policy, and because he failed to cooperate with Keystone's investigation of his claim, in violation of Part E(B) of the Policy.[5]  Further, Keystone argues that Ms. Muhammad's deposition testimony, which this Court could not review before its March 10, 2015 Order denying Keystone's previous Motion for Summary Judgment, proves that Plaintiff made fraudulent statements to Keystone and failed to cooperate in its investigation of his claim.

---

[5] In its previous Motion for Summary Judgment, Plaintiff also argued that, even if Plaintiff were eligible for coverage under its policy, he would not be entitled to the recovery he seeks pursuant to the terms of the Policy. *See* (ECF No. 27).  This argument was addressed by this Court's March 10, 2015 Order denying Keystone's previous Motion for Summary Judgment, and does not warrant further discussion because Keystone has not alleged any new information that would change the analysis of this argument. This Court noted in its March 10, 2015 Order that, if Keystone were found to be in breach of its contract with Plaintiff, Plaintiff would be entitled to the damages sought under the express terms of the Policy and under Maryland common law. [ECF No. 31 at 8-9].

A review of Ms. Muhammad's deposition testimony demonstrates several material contradictions with Plaintiff's deposition testimony. Namely, Ms. Muhammad testified that she had an ongoing relationship with Plaintiff. She stated that she had been, and was at the time of the deposition, Facebook friends with Plaintiff, and that they spoke on the phone "[o]nce or twice every couple of months." [ECF No. 48, Exh. 5 at 15:23-16:4]. This was in stark contrast to Plaintiff's testimony during which he initially stated that he had no way of contacting Ms. Muhammad and had only met her one time, on the evening that his car was allegedly stolen. *See* [ECF No. 48, Exh. 2 at 79:5-83:6] ("Q. Okay. What else did you do with her, other than take her to the movies? A. That was it. I don't remember, actually… Q. How many other times did you see her in person? A. I don't know… Q. Did you know any details about her life? A. No. I don't know. I don't know none of that – Internet."). Keystone contends that the contradictions between the deposition testimony of Plaintiff and Ms. Muhammad demonstrate, with no genuine dispute of material fact, that Plaintiff made fraudulent statements to Keystone and failed to cooperate with its investigation of his claim by refusing to provide Ms. Muhammad's name and contact information. Thus, Keystone argues that Plaintiff violated provisions of his contract with Keystone, and that it was not bound to cover Plaintiff's loss under the Policy.

The Fourth Circuit has held that "summary judgment under Rule 56…may not be invoked where…affidavits present conflicting versions of the facts which require credibility determinations." *Davis v. Zahradnick*, 600 F.2d 458, 460 (4th Cir. 1979). Likewise, this Court has noted summary judgment is not appropriate when the deposition testimony of "principal witnesses" presents conflicting versions of the facts. *See Nilson v. Historic Inns Grp., Ltd.*, 903 F. Supp. 905, 909 (D. Md. 1995); *cf.* Fed. R. Civ. P. 56(c) (noting that a party may support its Rule 56 motion by citing to materials in the record "including depositions, documents,

electronically stored information, affidavits or declarations, stipulations…, admissions, interrogatory answers, or other materials."). Furthermore, this Court has held that, "Disposition of matters turning on credibility may only be determined by the trier of fact." *Id.*; *see also*, *Am. Computer Dev., Inc. v. McKinley-Ross Corp.*, No. CIV. ELH-14-00808, 2015 WL 1814622, at *2 (D. Md. Apr. 21, 2015) ("[I]n the face of conflicting evidence, such as competing affidavits or conflicting deposition testimony, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.").

In this Court's March 10, 2015 Order denying Keystone's prior Motion for Summary Judgment, [ECF No. 31], this Court noted that summary judgment could not be granted, in part, because Keystone's argument turned on an assessment of Plaintiff's credibility. *See* [ECF No. 31 at 8] ("The relevant inquiry, then, is whether Plaintiff is credible, which is a question for the jury. In sum, this Court cannot conclude as a matter of law that Plaintiff failed to cooperate, and Keystone's argument therefore fails." ). Keystone now argues that because Ms. Muhammad's deposition testimony contradicts that of Plaintiff, and supports its version of the facts, that there is no genuine dispute of material fact. Keystone did not supply any additional evidence to corroborate Ms. Muhammad's deposition testimony, such as phone records or records of Facebook messages between Plaintiff and Ms. Muhammad, that would demonstrate that Plaintiff made fraudulent statements or intentionally failed to cooperate with Keystone. Accordingly, the only evidence available for review is the competing deposition testimony of Plaintiff and Ms. Muhammad. As this Court has noted, it is for the finder of fact to determine which version of the alleged facts it accepts as credible. *See Am. Computer Dev., Inc.*, 2015 WL 1814622, at *2. Thus, it would be for a jury to decide whether it found Plaintiff or Ms. Muhammad more

credible, and which version of the alleged facts it found best supported by the record. *See Nilson*, 903 F. Supp. at 909. The Court recognizes the clear contradictions between Plaintiff's and Ms. Muhammad's deposition testimony, and the changes in Plaintiff's allegations over time, which call into question the veracity of his account. Even so, his testimony must be assumed credible, and the facts must be taken in the light most favorable to him as the non-moving party. *See Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986) ("[T]he credibility of [Plaintiff's] evidence must be assumed."); *Nilson*, 903 F. Supp. at 907. Because Keystone's argument as to whether Plaintiff made fraudulent statements and failed to cooperate in its investigation relies on a credibility determination, and there remains a genuine issue of material fact, Keystone has failed to meet its burden.

**IV.    CONCLUSION**

For the foregoing reasons, it is hereby ORDERED this 14th day of December, 2015 that Keystone's Motion for Summary Judgment [ECF No. 48] is DENIED.


Dated:  December 14, 2015

                                                      /s/
                                Stephanie A. Gallagher
                                United States Magistrate Judge